**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-00680-RM

SAN LUIS VALLEY ECOSYSTEM COUNCIL and
CONEJOS COUNTY CLEAN WATER, INC.,

    Plaintiffs,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the U.S. Department of Interior, and
ANDREW ARCHULETA, in his official capacity as Field Manager, San Luis Valley Field Office, Bureau of Land Management,

    Defendants.

---

**ORDER**

---

This matter involves a challenge, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to Defendants' alleged "failure to fulfill their public disclosure and informed decisionmaking duties under the National Environmental Policy Act [('NEPA')] ,] 42 U.S.C. §§ 4321 *et seq.*" (ECF No. 1 ¶ 1; ECF No. 21-1 ¶ 1.)  The challenged decision occurred on January 6, 2014, when Defendants (collectively "BLM") "approved a proposed oil and gas well, known as San Francisco Creek #1 ('SFC #1' or 'proposed project') on federally leased minerals just south of Del Norte, Colorado."  (ECF No. 1 ¶¶ 2, 53; ECF No. 21-1 ¶¶ 2, 53.)  Plaintiffs' claims arise under NEPA, the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*

This matter comes before the Court on Plaintiffs' "First Motion to Amend Complaint." (ECF No. 21.) Plaintiffs "request leave to amend with a claim specifically identifying the basis to invalidate the federal mineral lease that Plaintiffs intended to include within the claims in the original complaint, and particularly Claims One and Seven." (ECF No. 21 at 1.) Defendants oppose Plaintiffs' motion (ECF No. 21) on the basis that the "amendment is futile: Plaintiffs' claim accrued in 2006 upon the issuance of the lease and the six-year statute of limitations for NEPA and FLPMA challenges to the lease has run" (ECF No. 25 at 1). In reply and for the first time, Plaintiffs argue that the Court should equitably toll the applicable statute of limitations, 28 U.S.C. § 2401(a). (ECF No. 26 at 10-15.) The Court permitted Defendants to file a surreply in opposition to Plaintiffs' newly raised equitable tolling argument. (ECF Nos. 28; 29.)

For the reasons stated below, the Court DENIES Plaintiffs' motion to amend the complaint (ECF No. 21).

I.      **BACKGROUND**

   A.      **Substantive Background**

In 2006, Dan A. Hughes Company ("Hughes") leased the federal mineral estate underlying Bureau of Land Management land south of Del Norte, Colorado. (ECF No. 1 ¶¶ 12, 38; ECF No. 21-1 ¶¶ 12, 38.) On December 8, 2011, Hughes submitted to the Bureau of Land Management an application for a permit to drill ("APD") an exploratory oil and gas well in Rio Grande County, Colorado, called the SFC #1. (ECF No. 1 ¶ 45; ECF No. 21-1 ¶ 45.) On May 31, 2013, BLM issued a Draft Environmental Assessment ("Draft EA") for the APD and, after receiving public comments—which includes those from Plaintiffs—issued a Final Environmental Assessment ("Final EA") on January 6, 2014. (ECF No. 1 ¶¶ 48, 53; ECF No.

21-1 ¶¶ 48, 53.) Also on January 6, 2014, Defendants issued a Finding of No Significant Impact and Decision Record ("FONSI").  (ECF No. 1 ¶ 53; ECF No. 21-1 ¶ 53.)

On March 5, 2014, Plaintiffs filed this lawsuit alleging eight claims for relief.  (ECF No. 1.)  Plaintiffs bring an APA challenge to various agency actions taken to approve drilling and development of a federal oil and gas well in the San Luis Valley.  (*See* ECF No. 1; *see* ECF No. 21-1.)  Through its Complaint, Plaintiffs seek that the Court enter an order that (1) declares Defendants' actions unlawful; (2) vacates Defendants' unlawful approval of SFC #1, including the lease and drilling approvals; (3) vacates the unlawful NEPA process used by Defendants; and (4) remands the matter to Defendant Bureau of Land Management for compliance with the legal requirements of the federal oil and gas leasing program consistent with NEPA, MLA as amended by the Federal Onshore Oil and Gas Leasing Reform Act of 1987 ("FOOGLRA"), 30 U.S.C. §§ 188 *et seq.*, FLPMA, and any other ruling in this matter.  (ECF No. 1 ¶ 3; ECF No. 21-1 ¶ 3.)

In its first claim for relief, Plaintiffs allege that "[i]n deciding to lease, review, accept, authorize, and approve the drilling and development project involving the Conejos Formation aquifer, BLM unlawfully abbreviated the required NEPA process and did not prepare a proper NEPA document or properly approve SFC #1 via an [Environmental Assessment ('EA')/Finding of No Significant Impact ('FONSI')] where significance was present."  (ECF No. 1 ¶ 77; ECF No. 21-1 ¶ 77.)  Further, Plaintiffs allege by Defendants' "fail[ing] to conduct a lawful NEPA process and [issuing] of the FONSI, BLM violated NEPA and its implementing regulations, acted arbitrary and capriciously, abused its discretion, and failed to act in accordance with the law, and therefore violated the APA, 5 U.S.C. § 706(2)."  (ECF No. 1 ¶ 80; ECF No. 21-1 ¶ 80.)

In its second claim for relief, Plaintiffs allege Defendants' "failure to consider a reasonable range of alternatives [for protecting the Conejos Formation aquifer and other ground

and surface water resources] is in violation of NEPA and NEPA's implementing regulations." (ECF No. 1 ¶¶ 83-84; ECF No. 21-1 ¶¶ 83-84.)

In its third claim for relief, Plaintiffs allege Defendants violated "NEPA by failing to disclose and analyze the actions necessary to prevent [Unnecessary or Undue Degradation ('UUD')] of the public lands, including reasonable mitigation measures" in violation of the APA. (ECF No. 1 ¶¶ 87-90; ECF No. 21-1 ¶¶ 87-90.)

In its fourth claim for relief, Plaintiffs allege Defendants violated NEPA and the APA by failing to "consider SFC #1's impacts on the San Luis Valley environmental justice community." (ECF No. 1 ¶¶ 94-95; ECF No. 21-1 ¶¶ 94-95.)

In its fifth claim for relief, Plaintiffs allege Defendants "failed to provide a lawful statement of purpose and need" in violation of NEPA and its implementing regulations. (ECF No. 1 ¶¶ 98-99; ECF No. 21-1 ¶¶ 98-99.)

In its sixth claim for relief, Plaintiffs allege Defendants "considered only two alternatives in detail . . . [and that its] failure to consider . . . a reasonable range of alternatives . . . violates NEPA and its implementing regulations." (ECF No. 1 ¶¶ 102-03; ECF No. 21-1 ¶¶ 102-03.)

In its seventh claim for relief, Plaintiffs allege Defendants "did not comply with the 'hard look' requirements under NEPA and NEPA's implementing regulations before approving the challenged action." (ECF No. 1 ¶ 110; ECF No. 21-1 ¶ 110.)

In its eighth claim for relief, Plaintiffs allege Defendants "failure to prevent UUD to wildlife and other resources" violates the APA. (ECF No. 1 ¶ 115; ECF No. 21-1 ¶ 115.)

B.   **Relevant Procedural History**

On March 9, 2015, the Court granted, in part, and denied, in part, Plaintiffs' motion to supplement the administrative record. (ECF No. 20.) In the Court's March 9 Order, the Court

held that "[n]one of Plaintiffs' eight claims for relief challenge BLM's 2006 *approval* of the lease underlying the APD which is at issue." (ECF No. 20 at 17 (emphasis in original).) Specifically, the Court found that the "2006 lease decision is raised only in Plaintiffs' first claim (ECF No. 1 ¶¶ 75-80) but only as it relates to the approval of SFC #1." (ECF No. 20 at 19.)

On March 24, 2015, Plaintiffs moved to amend the Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 21 at 1.) Plaintiffs submitted a proposed First Amended Complaint. (ECF No. 21-1.) Plaintiffs' proposed First Amended Complaint adds "Claim 9 to frame the claim around the NEPA and FLPMA violations at the lease stage, which accrued and ripened upon the issuance of the APD based on an EA, instead of an EIS." (ECF No. 21 at 6-7, 6-11.)

## II. LEGAL STANDARDS[1]

### A. Amendments to the Complaint

When the period for amending a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *Accord Foman v. Davis*, 371 U.S. 178, 182 (1962). The purpose of Rule 15 is to provide litigants "the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). In

---

[1] The Court recognizes that because reviews of agency actions in the Tenth Circuit Court of Appeals are processed as appeals, the Court "must judge the sufficiency of the [Complaint] for relief under Federal Rule of Appellate Procedure 15(a)(2)(C)." *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1272 (D. Colo. 2010); *see Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). A plaintiff's failure to comply with Rule 15(a)(2)(C) may result in dismissal unless "petitioner's intent to seek review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1272 (quoting *Entravision Holdings, LLC v. Fed. Commc'ns Comm'n*, 202 F.3d 311, 313 (D.C. Cir. 2000)). As the Court previously held, the Court could not discern Plaintiffs' intent to seek review of the lease decision in the original complaint in relation to Plaintiffs' specific claims. (ECF No. 20 at 17.) Merely because Plaintiffs seek review of an administrative agency decision does not transform Plaintiffs' obligations in seeking to amend the complaint under the Federal Rules of Civil Procedure.

considering whether to grant leave to amend, the Court considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies with previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Foman*, 371 U.S. at 182.

"While Rule 15 provides that leave to amend a complaint shall be freely given when justice so requires, a district court may refuse to allow amendment if it would be futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (citation omitted)." "A proposed amendment is futile if the complaint, as amended, would be subject to *dismissal*." *Id*. (emphasis added) (quoting *Bradley v. Val-Meijas*, 379 F.3d 892, 901 (10th Cir. 2004)). In particular, when a proposed claim would be barred by the relevant statute of limitations, the Court can properly deny the amendment as futile. *See Mercer-Smith v. N.M. Children, Youth, & Families Dep't*, 416 F. App'x 704, 713 (10th Cir. 2011) (unpublished); *see also Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010); *see also Columbraria Ltd. v. Pimienta*, 110 F. Supp. 2d 542, 549 (S.D. Tex. 2000) (holding that because the proposed added claim was time barred, permitting an amendment of the claim would have been futile).

### B. Claims Subject to Dismissal

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id*. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A "plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original, internal citation and quotation omitted).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). The Tenth Circuit has further noted "that the nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. (Internal quotation and citation omitted.) Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and

conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'" *Id*. (Citation omitted.)

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) (citation omitted); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996) (citations omitted). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions. . . .'" *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

"Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n.3 (10th Cir. 1999) (citations omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *accord Matthews v. Wiley*, 744 F. Supp. 2d. 1159, 1168-69 (D. Colo. 2010) (citations omitted).

"In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint." *County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (hereinafter "*County of Santa Fe*") (citation omitted). The Tenth Circuit further explains two exceptions to this rule:

> First, a district court may review 'mere argument contained in a memorandum in opposition to dismiss' without converting the Rule 12(b)(6) motion into a motion for summary judgment. Second, 'the *district court may consider documents*

*referred to in the complaint* if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'

*Id*. (internal citations omitted and emphasis added).

### C. Equitable Tolling

"While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (the court only looked at the allegations in a complaint to determine whether equitable tolling applied to defeat a statute of limitations defense). As an affirmative defense, a statute of limitations may be subject to certain defenses such as equitable tolling. *See Rotella v. Woods*, 528 U.S. 549, 558-61 (2000) (holding that federal statutes of limitations "are generally subject to equitable principles of tolling"). Equitable tolling, however, is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. The Tenth Circuit "has applied equitable tolling when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and [l]ikewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (citations omitted).

### III. ANALYSIS

### A. The Three-Phase Decision-making Process and Ripeness

The Department of the Interior, including the Bureau of Land Management, "manages the use of federal oil and gas resources through a three-phase decision-making process." *Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1151 (10th Cir. 2004). The first stage is the development of a resource management plan ("RMP"), which is a land-use planning document that describes allowable uses, future goals, and next steps, and governs future planning

9

and development for an entire region. *Id*. (citations omitted). The second stage occurs when the Bureau of Land Management leases a particular parcel of land for oil and gas development consistent with the RMP. *Id*. At the third stage, the lessee must obtain Bureau of Land Management's approval of an APD in order to commence drilling operations or surface disturbance preliminary to drilling operations. *Id*. at 1151-52 (citation omitted).

Claims under NEPA, MLA, and FPLMA are subject to the APA's general six-year statute of limitations. 28 U.S.C. § 2401(a); *Chem. Weapons Working Grp., Inc., v. U.S. Dep't of Army*, 111 F.3d 1485, 1494-95 (10th Cir. 1997). "[A] challenge to the failure of an agency to comply with the NEPA procedures becomes ripe at the time the failure takes place. . . ." *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1263 (10th Cir. 2002) (citation omitted); *accord UTE Distrib. Corp. v. Sec'y of the Interior of the United States*, 584 F.3d 1275, 1282 (10th Cir. 2009) (holding that "a claim against [the] United States first accrues on the date when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action").

Claims regarding lease-tier compliance can be dependent upon site-specific facts and which *can* ripen for judicial review with the approval of an APD. *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1160 (10th Cir. 2013) (hereinafter "*SUWA*"); *N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 718-19 (10th Cir. 2009). There is not a *per se* rule of law with respect to ripeness of lease-tier compliance claims. *See Wyo. Outdoor Council v. Bosworth*, 284 F. Supp. 2d 81, 90-93 (D.D.C. 2003) (hereinafter "*Bosworth*"). Previously, other plaintiffs have challenged oil and gas leases at the lease stage prior to the issuance of APDs. *See, e.g.*, *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008) (in which the plaintiffs challenged the Bureau of Land Management's NEPA analysis at the leasing stage

when the Bureau of Land Management issued DNAs for leases but the appeal was dismissed for lack of appellate jurisdiction because the leases were terminated for nonpayment and thus, the claim was moot); *Amigos Bravos v. United States Bureau of Land Mgmt.*, Case No. 09-CV-00037-RB-LFG, 2011 WL 7701433, *5, *24 (D.N.M. Aug. 3, 2011) (holding that "BLM's decision not to prepare an EIS at the leasing stage, but to defer further analysis until the APD stage, was not arbitrary and capricious because the environmental impacts of which Plaintiffs complain were not reasonably foreseeable at the time, and the leasing decision did not constitute an irretrievable commitment of resources"); *Wilderness Soc'y v. Wisely*, 524 F. Supp. 2d 1285, 1312 (D. Colo. 2007) (challenge to adequacy of environmental assessment for lease sales); *S. Utah Wilderness Alliance v. Norton*, 457 F. Supp. 2d 1253, 1262-69 (D. Utah 2006) (holding that the defendants violated NEPA by issuing oil and gas leases).

Plaintiffs' complaint alleges that "Hughes' proposal to develop SFC #1 was analyzed under BLM's tiered approach to oil and gas decisionmaking." (ECF No. 1 ¶ 33; ECF No. 21-1 ¶ 33.) Plaintiffs further allege that "[t]he first tier of decisionmaking occurred in December of 1991 when BLM issued the San Luis Resource Area Approved Resource Management Plan ('SLRA RMP')." (ECF No. 1 ¶ 33; ECF No. 21-1 ¶ 33.) Plaintiffs further allege that "[t]he second tier of BLM's decisionmaking occurred in 2006. BLM leased 520 acres of BLM-managed subsurface estate located approximately 5 miles south of Del Norte, to Hughes. BLM did not conduct any lease-tier NEPA analysis before issuing the lease." (ECF No. 1 ¶ 38; ECF No. 21-1 ¶ 38.) Plaintiffs further allege that in 2011, "Hughes submitted an Application for Permit to Drill ('APD') for SFC #1." (ECF No. 1 ¶ 45; ECF No. 21-1 ¶ 45.) Plaintiffs further allege that "[i]n 2012, two oil and gas exploration wells were proposed in Rio Grande County,

one of which was SFC #1." (ECF No. 1 ¶ 39; ECF No. 21-1 ¶ 39.) In 2014, Defendants issued the Final EA and related FONSI. (ECF No. 1 ¶ 53; ECF No. 21-1 ¶ 53.)

Neither Plaintiffs' original complaint (ECF No. 1) nor its proposed amendment complaint (ECF No. 21-1) plead facts—as opposed to facts couched as legal conclusions[2]—that Plaintiffs' claim regarding the lease issuance was indisputably not ripe until BLM issued the Final EA and related FONSI with respect to SFC #1. The Court is reluctant to save Plaintiffs from the strictures of a timeliness requirement by engaging in a retrospective determination of whether the Court would have held the claim ripe had it been brought on time. *See Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 914 (D.C. Cir. 1985).

Nevertheless, for completeness of inquiry, the Court will engage in a retrospective determination as to whether Plaintiffs' lease-tier claim became ripe in 2006. In determining whether an agency's decision is ripe for review, the Court examines "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (internal quotations and citation omitted). The Tenth Circuit instructs that the Court may consider:

> (1) whether the issues in the case are purely legal; (2) whether the agency action involved is 'final agency action' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff; and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency.

*SUWA*, 707 F.3d at 1158 (internal quotation and citation omitted).

As to the first consideration, support for the Court's conclusion that the lease decision became ripe in 2006 is that Plaintiffs allege that there exists an "administrative record created when issuing the lease." (ECF No. 1 ¶ 56; ECF No. 21-1 ¶ 56.) If there were an administrative

---

[2] "Although the lease was issued in 2006, it only became ripe and justiciable upon BLM's approval of the Decision Record for the proposed project." (ECF No. 1 ¶ 38; ECF No. 21-1 ¶ 38.) This is a legal conclusion couched as an allegation and thus, is entitled to no presumption of veracity. *See Khalik*, 671 F.3d at 1190 (citation omitted).

record, that represents the culmination of the agency's analysis and thus, such decision is subject to judicial review. 5 U.S.C. § 706 (limiting a court's review to "the whole record" before the agency); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (citations omitted).

As to the second consideration, support for the Court's conclusion that the lease decision became ripe in 2006 is that Plaintiffs allege that "[t]he district court has jurisdiction to carry out judicial review of all NEPA process tiers BLM used in taking the final agency *actions* alleged herein." (ECF No. 1 ¶ 11; ECF No. 21-1 ¶ 11.) With respect to the proposed amended complaint, in Claim Nine, Plaintiffs allege that "BLM violated the law by issuing a lease that contemplates development of federal minerals without considering, as NEPA requires, the unique and controversial effects of the federal drilling program." (ECF No. 21-1 ¶ 117.) Further, in Claim Nine, Plaintiffs allege "[t]he failure to comply with FLPMA and NEPA in issuing Lease COC-69530 is arbitrary and capricious, an abuse of discretion, and action without observance of procedures required by law, in violation of the APA." (ECF No. 21-1 ¶ 130.) Thus, Plaintiffs undermine their own position by pleading facts which establish that the lease-tier decision constitutes "final agency action." Further, "[f]ederal courts have repeatedly considered the act of issuing a lease to be a final agency action which may be challenged in court." *SUWA*, 707 F.3d at 1159 (collecting cases).

As to the third consideration, support for the Court's conclusion that the lease decision became ripe in 2006 is that courts have held that "the issuance of the lease represents the irreversible and irretrievable commitment of public resources for private use." *Id*. (citation omitted). Once the lease is issued, the lessee has a property right in the parcel and "cannot be prohibited from surface use of the leased parcel." *Id*. (internal quotation and citation omitted).

13

Plaintiffs' retort is that "[a]ny development on this lease was speculative until the APD was issued, preventing Plaintiffs from bringing the present action until faced with concrete and immediate impacts necessary to establish standing and ripeness." (ECF No. 21 at 7-8 (citation omitted), *accord* 9.) Plaintiffs cite to several documents in the administrative record that a challenge to the lease decision would not have been ripe where additional NEPA would occur at the APD stage when Defendants' received drilling proposals. (ECF No. 21 (citing AR 07462, 07463, 07464, 07465).)

First, *Defendants' alleged position* as to whether a challenge to the lease decision[3] would have been ripe has no bearing on the *Court's analysis* of the issue. Second, Plaintiffs fail to articulate that Defendants would conduct additional NEPA analysis of the *leasing* decision at a later point. (*See generally* ECF Nos. 21, 26.) Third, the lease at issue, COC69530 (AR 01443-47), provides the following:

> This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas *(except helium)* in the lands described [in the lease] together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provisions of this lease.

(AR 01443.) Plaintiff argues that *Bosworth* provides support for its position that "challenge to issuance of an oil-and-gas lease was not ripe for review because actual development rested upon uncertain future events." (ECF No. 26 at 4.) Because *Bosworth* was brought pursuant to the Endangered Species Act ("ESA"), 16 U.S.C §§ 1531 *et seq*. and not NEPA, as this action is, it is

---

[3] Further, Plaintiffs argue that the DNA "is part of an interim step in the BLM's internal decision process and does not constitute an appealable decision." (ECF No. 26 at 8 (citing AR 07467).) The fact that the DNA may be an "interim step" does not affect the Court's analysis as to whether the lease issuance is a final agency action subject to APA review.

of limited precedential value. *Compare Wilderness Soc., Ctr. for Native Ecosystems v. Wisely*, 524 F. Supp. 2d 1285, 1300 (D. Colo. 2007) (reasoning that cases relied upon "arising under NEPA, not the ESA, . . . are of no assistance in resolving when the duty to confer arises during the leasing process"). Further, the Court finds *Bosworth* not binding based upon a factual analysis. In this matter, the lease requires the lessee to "exercise reasonable diligence in developing and producing, and shall prevent unnecessary damage to, loss of, or waste of leased resources." (AR 01444.) Thus, the Court finds that the lease, COC69530 (AR 01443-47) represents the irreversible and irretrievable commitment of public resources to a private company for the lease's term requiring "reasonable diligence" in a variety of manners with respect to the leased resources. The fact that Defendants retain some control over the leased resources (AR 01444) does not affect the Court's conclusion. This is not one of those cases where there is "too much uncertainty as to when and what type of drilling, if any will occur on the [. . .] contested leases." *Cf. SUWA*, 707 F.3d at 1160. Similarly, the Bureau of Land Management's position in the DNA that "[t]he act of leasing does not authorize any development or use of the surface of lease lands, without further application and approval by the BLM" (AR 07462) does not support Plaintiffs' contention regarding the uncertainty as to drilling. This is because the DNA refers to "surface of lease lands" and not all "leased resources" as referred to in the lease (AR 01444).

As to the fourth consideration, support for the Court's conclusion that the lease decision became ripe in 2006 is that a challenge at that time would have promoted effective administration of the tiered process involved in oil and gas leases. That is, a timely challenge to the 2006 lease would have allowed Defendants to correct any NEPA inadequacies at the leasing stage before approving an APD for that lease, rather than having to go through the APD approval process only to undermine the permit because of problems with a now nine-year old lease.

For these reasons, the Court finds that the lease decision became ripe in 2006. Plaintiffs' challenge, if the proposed amended complaint were to relate back to the original filing, to the lease was not raised until 2014. Thus, Plaintiffs' Claim Nine which challenges the 2006 lease decision is barred by the applicable statute of limitations, 28 U.S.C. § 2401(a), subject to the Court's analysis of Plaintiffs' equitable tolling argument.

### B. Equitable Tolling

#### 1. Whether Plaintiffs Waived this Argument

The Tenth Circuit has held that "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1192 (internal quotation and citations omitted). "When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply." *E.E.O.C. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) (citing *Pippin*, 440 F.3d at 1192). In this matter, Plaintiffs raise, for the first time in their reply brief, alternatively, that the applicable statute of limitations should be tolled. (*Compare* ECF No. 21 *with* ECF No. 26.) The Court permitted Defendants to file a surreply addressing Plaintiffs' equitable tolling argument. (ECF No. 28.) Therefore, the equitable tolling argument is properly before the Court.

#### 2. Whether Equitable Tolling Applies

The District of Colorado has previously held that the APA's statute of limitations, 28 U.S.C. § 2401(a), is a jurisdictional statute of limitations that is subject to equitable tolling. *Strich v. United States*, 793 F. Supp. 2d 1238, 1246 (D. Colo. 2011) (citation omitted). Plaintiffs' claim with respect to Defendants' lease decision (ECF No. 21-1 ¶¶ 116-32), however,

is not subject to equitable tolling for the following reasons. Plaintiffs fail to demonstrate that Defendants' "conduct rises to the level of active deception; where [they have] been lulled into inaction by [] [D]efendants, and [l]ikewise, if [they were] actively misled or [have] in some extraordinary way been prevented from asserting [their] rights." *Clymore*, 245 F.3d at 1199.

With respect to Plaintiffs' argument that Defendants engaged in a "shell game" in which the Bureau of Land Management "assert[ed] additional NEPA lease analysis would be conducted the APD-tier and thus, such claims are unripe until the APD-tier concludes" (ECF No. 26 at 12), the Court finds such argument unpersuasive. First, with respect to the argument that the documents relied upon assert that additional "NEPA lease analysis would be conducted" (AR 01443-47; AR 07458-69), the Court does not find the documents to support that proposition. The documents refer to site-specific analysis that will occur when APDs are submitted. (*See, e.g.*, AR 07464 ("[s]hould development applications be received on any parcel that is leased, additional NEPA review must occur"). The documents do not state that further *lease-decision* NEPA analysis will occur. (*See generally* AR 07463-64.) Second, as previously stated (*see supra* Section III.A), regardless if it is the Bureau of Land Management's position that claims related to the lease decision are not ripe until an APD, it is the Court's province to make such a determination. Nothing precluded Plaintiffs from resolving any doubt about the ripeness of a lease-decision claim within the six years of the lease decision and that is the course of action Plaintiffs should have pursued. *See Eagle-Picher Indus.*, 759 F.2d at 914. Thus, Defendants engaged in no "active deception."

Plaintiffs argue that they did not know or have "reason to know of the lease-tier NEPA/FLMPA violations before publication of the APD-tier NEPA notices, which occurred on August 20, 2012." (ECF No. 26 at 9.) First, this is an allegation not asserted in the proposed

amended complaint and thus, the Court can properly disregard it. *See County of Santa Fe*, 311 F.3d at 1035. Second,

> a notice of competitive lease sale is posted in all BLM and USFS offices approximately 45 days prior to the sale or on the BLM web site (www.co.blm.gov/oilandgas/leaseinfo.htm). It is also made available through the mail for a fee to those that request it.

(AR 07465.) Plaintiffs fail to allege facts that show that this procedure was not completed for lease COC69530 (AR 01443-47). The Court agrees with Defendants that Plaintiffs could have protested the sale in advance or filed a timely lawsuit at any time within the statute of limitations alleging that the DNA issued to support the lease agreement was inadequate under NEPA. *See Sierra Club*, 287 F.3d at 1263. Further, the lease provides adequate notice that development of the leased resources is imminent[4]. (AR 01444 (requiring lessee to "exercise reasonable diligence in developing and producing, and shall prevent unnecessary damage to, loss of, or waste of leased resources".) Plaintiffs provide no support for their assertion that "raising lease-tier issues in the administrative process" (ECF No. 26 at 6, 10 (citing AR 00453, 00456-59, 00460-61, 00524)) equitably tolls the applicable statute of limitations. Finally, the Court finds unpersuasive Plaintiffs' argument that there is confusion as to the proper forum to challenge a lease-tier NEPA violation (ECF No. 26 at 14). As stated previously, numerous courts have found a challenge to a lease-tier NEPA violation ripe. (*See supra* Section III.A.)

## IV. CONCLUSION

Based on the foregoing, the Court:

(1) DENIES Plaintiffs' motion to amend its complaint (ECF No. 21); and

(2) with respect to the matter's merits (ECF No. 1), ORDERS:

   (i) Plaintiffs' opening brief due July 20, 2015;

---

[4] In fact, Plaintiffs could have contested the lease-decision within the time frame that Hughes filed its APD which indicated Hughes's intent to proceed with development. (*See* AR 00590 (filed on December 8, 2011).)

      (ii)      Defendants' response brief due August 17, 2015; and

      (iii)     Plaintiffs' reply brief due August 31, 2015.

DATED this 19th day of June, 2015.

                                    BY THE COURT:

                                    _____
                                    RAYMOND P. MOORE
                                    United States District Judge